**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| EULA MACK, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-10-4881 |
| § | |
| JOHN L. WORTHAM & SON, L.P., § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND OPINION**

This is an employment discrimination suit under Title VII of the Civil Rights Act ("Title VII") and the Age Discrimination in Employment Act ("ADEA"). The plaintiff, Eula Mack, alleges that John L. Wortham & Son, L.P. ("Wortham") discriminated against and ultimately fired her because of her race, sex, culture, and age. Wortham has moved for summary judgment dismissing all of Mack's claims. (Docket Entry No. 20). Based on the motion; the response, (Docket Entry No. 21); the reply, (Docket Entry No. 22); and the applicable law, this court grants the motion for summary judgment. The reasons are set out below. Final judgment is entered by separate order.

**I.    Background**

Mack is an African-American woman born in 1953. (Docket Entry No. 6, EEOC Charge of Discrimination; Docket Entry No. 20, Ex. B, Mack Dep., at 10). Wortham hired Mack in November 2005 to work in the Commercial Accounts Department. (Docket Entry No. 20, Ex. B, at 73–74). Her supervisor was Peter Johnston. Sometime in December 2005, at Johnston's request, Wortham transferred Mack to the Risk Management Department. (*Id.* at 73–74, 77, 96, 114). Midway through 2006, Mack's supervisor in that department informed her that she no longer had a place

there but offered her the opportunity to work in the Marine Department. (*Id.* at 80, 97). Vice-Chairman Charles Flournoy, head of the Marine Department, brought Mack on as an Administrative Assistant some time late in 2006, to work primarily for Phil Dunn and Jerry Shelton. (*Id.* at 97–98, 102–103).

The summary-judgment evidence shows that after joining the Marine Department, Mack began arriving at work late and working unapproved overtime hours. Emails sent in October 2006 reflect that Flournoy and Dunn counseled Mack multiple times on her tardiness and unapproved overtime. The emails indicate that Flournoy and Dunn verified that Mack understood her supervisors' attendance expectations. (Docket Entry No. 20, Ex. A, Mack Employee File, at 6, 8, 10, 12; Ex. B, at 134, 136–38, 144, 146–47, 152–53). Despite these reprimands, Flournoy gave Mack a three percent raise. (Docket Entry No. 20, Ex. A, at 15).

Emails in March 2007 among Flournoy, Shelton, and Dunn reveal that Mack again worked overtime without her supervisors' permission. (Docket Entry No. 20, Ex. A, at 16–17; Ex. B, at 154). She continued to arrive late for work throughout 2007, and she was warned that she could face discipline if her tardiness persisted. (Docket Entry No. 20, Ex. B, at 155–59).

On December 4, 2007, an incident occurred between Mack and Rebecca Cox, Flournoy's assistant. When Mack arrived late to work, Cox asked her to complete her time slip as soon as possible because hers was the only slip not yet submitted. Mack refused and told Cox to "stay out of her face and she would stay out of hers." (Docket Entry No. 20, Ex. A, at 24–25). Flournoy and Al Hahn, a Human Resources Department representative, met with Mack and told her that her tardiness and her outburst were both unacceptable. Mack told Hahn that she was interested in transferring departments. Hahn understood this response as "an unwillingness to work with Rebecca

and/or to make getting to work on time a priority." (*Id.*) Hahn told Mack a transfer was not possible because she had already transferred twice. (*Id.*)

After, and in spite of, the December 4, 2007 meeting, Mack's late arrivals at work continued. On March 4, 2008, Hahn placed Mack on probation from March 4, 2008 through April 30, 2008 for her tardiness. Mack was to report to her desk before 8:15 a.m. at least 80 percent of the work days or she would be fired. (*Id.* at 26). Mack also received several more admonishments in 2008 that she did not have Flournoy's permission to work more than 38.75 hours per week. (*Id.* at 27–29).

On December 22, 2008, an incident occurred between Mack and Gavin Hurd, a Wortham technician who assigned Mack work on occasion. (Docket Entry No. 20, Ex. B, at 190–91). Hurd was trying to locate an urgently needed insurance certificate. Mack remained silent while he looked, though she knew the file's location. When Hurd finally found the file, he told Mack — firmly, from his perspective; from her perspective, by yelling at her — to complete the necessary work immediately. Mack refused and told Hurd to complete it himself. A few minutes later, Hurd asked Mack for the file to reassign it to another secretary. Mack insisted that Hurd retrieve the file himself. (Docket Entry No. 20, Ex. A, at 30; Ex. B, at 90–91). Mack complained to Flournoy about Hurd's "unprofessional" behavior of yelling at her in front of others. (Docket Entry No. 20, Ex. A, at 31). Although Flournoy did not witness the incident, he told Mack that he would not tolerate her insubordination, regardless of Hurd's alleged conduct. (*Id.* at 30–31).

Mack complied with the attendance requirements during the probationary period. But by early January 2009, her supervisors documented that she had "fallen back into her old practice of getting in late." (*Id.* at 32). During this period, Mack had another "acrimon[ious]" exchange with Rebecca Cox, this time about the accuracy of Mack's timesheets. (*Id.*) Leticia Martinez, another

3

Wortham employee, alerted Flournoy that Mack had erroneously filled out policy-processing "checklists." (*Id.* at 34). Martinez told Flournoy about this "failure to follow established procedures," reporting that the procedures Mack failed to follow were "common knowledge within the department." (*Id.*)

On February 13, 2009, Flournoy informed Hahn in Human Resources that the Marine Department was overstaffed because of a new automation system and a significant loss of business. (*Id.* at 37). Flournoy eliminated Mack's position because she was "the weakest member of the support staff as well as one of the highest paid." (*Id.*) Mack's termination notice stated that her position was eliminated due to "[e]conomic conditions and loss of significant business [that] left [the] department overstaffed" and that Mack's performance had been "standard" to "below standard." (*Id.* at 38).

Mack filed a charge of discrimination with the EEOC on March 24, 2009, alleging race and age discrimination and retaliation. (Docket Entry No. 6). The EEOC mailed a notice of right to sue on August 30, 2010. (*Id.*) The notice stated that any lawsuit "must be filed WITHIN 90 DAYS of your receipt of this notice." (*Id.*) Mack filed suit on December 2, 2010. (Docket Entry No. 1). Mack alleged race, sex, culture, and age discrimination: (1) while working in Commercial Accounts in 2005; (2) while working in Risk Management in 2006; and (3) while working in the Marine Department from 2006 to 2009. (Docket Entry No. 6, ¶¶ 6–12, 14, 16). Mack also claimed that Wortham breached a promise to give her annual performance reviews. (Docket Entry No. 6, ¶ 13).

After discovery, Wortham sought summary judgment as to each of Mack's claims.

## II. The Summary-Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated

assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

### III. Analysis

#### A. Limitations

Wortham moves for summary judgment on the basis that Mack's Title VII and ADEA claims are time-barred because she filed suit more than 90 days after she presumably received the EEOC Dismissal and Notice of Rights letter. (Docket Entry No. 20, at 15). Under Title VII, a claimant has 90 days to file a civil suit after receiving an EEOC right-to-sue letter. *Nilsen v. City of Moss Point*, 674 F.2d 379, 381 (5th Cir. 1982). This 90-day limitation period is strictly applied. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002). The ADEA also requires a person to sue within 90 days after receiving the letter. 29 U.S.C. § 626(e); *St. Louis v. Tex. Worker's Comp. Comm'n*, 65 F.3d 43, 47 (5th Cir. 1995).

These 90-day limitations periods begin on the day the right-to-sue letter was received, not the day it was sent. *See Taylor*, 296 F.3d at 379. The EEOC's letter to Mack is dated August 30, 2010. (Docket Entry No. 6). Mack asserts that she received the right-to-sue letter on September 3, 2010. (Docket Entry No. 1, ¶ 5; Docket Entry No. 6, ¶ 5). If this date is correct, Mack timely filed suit on December 2, 2010.

"When the date on which a right-to-sue letter was actually received is either unknown or disputed, courts have presumed various receipt dates ranging from three to seven days after the letter was mailed." *Taylor*, 296 F.3d at 379. In her deposition, Mack testified that she checks her mail "once a week . . . . [o]r sometimes once every two weeks." (Docket Entry No. 20, Ex. B, at 239).

6

In response to Wortham's question, "So you have no reason to believe that [the letter] did not arrive in your mailbox within three days of August the 30th, 2010, correct?," Mack replied, "No." (*Id.*) Although Wortham disputes the date Mack received the letter, the court at this stage draws all reasonable inferences in Mack's favor. Wortham's argument does not rebut as a matter of law the presumption that Mack received the notice some time between three and seven days after August 30. Assuming she received it three days after — as she claims she did on September 3 — her suit was timely filed.

Under Title VII, a claimant must file a charge within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1); *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998) ("In a state that, like Texas, provides a state or local administrative mechanism to address complaints of employment discrimination, a title VII plaintiff must file a charge of discrimination with the EEOC within 300 days after learning of the conduct alleged."). Similarly, under the ADEA, a charge must be filed within 300 days after the alleged discrimination. 29 U.S.C. § 626(d)(1). Mack alleges that Wortham and its employees discriminated against her when she worked in Commercial Accounts in 2005, in Risk Management in 2006, and in the Marine Department from 2006 to 2009. Alleged acts of discrimination that occurred before May 28, 2008 — 300 days before she filed her discrimination charge — are time-barred unless there is a basis to excuse the delay. Mack invokes the continuing-violation theory to excuse her delay. (Docket Entry No. 21, ¶ 1).

"The continuing violation theory relieves a plaintiff of establishing that all of the complained-of conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period." *Messer v. Meno*, 130 F.3d

130, 134–35 (5th Cir. 1997).  A plaintiff may not rely on the continuing-violation theory "to resurrect claims about discrimination concluded in the past, even though its effects persist." *Berry v. Bd. of Supervisors of LSU*, 715 F.2d 971, 979 (5th Cir. 1983) (quoting *Del. State Coll. v. Ricks*, 449 U.S. 250, 257 (1980)) (internal quotation marks omitted).

Mack's EEOC Charge of Discrimination lists the earliest violation as January 1, 2008. (Docket Entry No. 6).  She did not include in the EEOC charge any reference to her transfer from Commercial Accounts in 2005 or the events that occurred when she worked in the Risk Management and Marine Departments in 2006 and 2007.  In this lawsuit, Mack alleges that while working in the Marine Department from early 2006 through February 13, 2009, she suffered discrimination because of her race, sex, culture, and age through Rebecca Cox's harassment and "double standards," Gavin Hurd's harassment, a purportedly defamatory email from another coworker, and Charles Flournoy's decision to eliminate her position.  (*Id.*, ¶¶ 8–12, 14, 16).  The earliest specific incident of discrimination Mack alleged during her employment with the Marine Department occurred in December 2007, with Cox.[1]  The December 2007 event ended in Wortham's refusal to allow Mack to transfer.

A denial of transfer is an easily identified discrete act.  Each such incident of discrimination and each retaliatory adverse employment decision is a separate, actionable unlawful employment practice.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).  The refusal to transfer Mack in December 2007 was clearly a discrete act of alleged discrimination.  Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in

---

[1] In her amended complaint, Mack alleged that this event occurred in December 2008. (Docket Entry No. 6, ¶ 14).  The uncontroverted summary-judgment evidence shows that this incident occurred in December 2007.  (Docket Entry No. 20, Ex. A, at 24–25; Ex. B, at 166–69).

8

timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge must be filed within the 300–day period after the discrete discriminatory act occurred. *See id.* The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim. *See id.* at 113.

In this case, Mack's failure to file her charge within 300 days after Wortham refused to transfer her from the Marine Department in December 2007 bars her from seeking relief because of that refusal and the events giving rise to it. *See Del. State*, 449 U.S. at 258–59 (holding that the present-day effects of time-barred past discrimination are not actionable under Title VII); *see also Huckabay*, 142 F.3d at 240 (explaining that a one-time employment event such as "demotion is the sort of discrete and salient event that should put the employee on notice that a cause of action has accrued."). Mack is also precluded from recovering for alleged prior acts of discrimination during her employment in Commercial Accounts and Risk Management.

### B. The Scope of the EEOC Charge

Mack's EEOC charge alleged race and age discrimination and unlawful retaliation. Mack's lawsuit alleges race, sex, culture, and age discrimination. Courts may not consider claims brought under Title VII that were not included in the EEOC Charge of Discrimination. 42 U.S.C. § 2000e-5(f)(1); *Hall v. Cont'l Airlines, Inc.*, 252 F. App'x 650, 653 n.1 (5th Cir. 2007). A district court does not have subject-matter jurisdiction until the "EEOC has first had the opportunity to obtain voluntary compliance." *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (quotation omitted). The

9

relevant question is whether the claims presented in the district court could "reasonably be expected to grow out of the charge of discrimination" presented to the EEOC. *Id.* Investigation into Mack's race- and age-discrimination charges, and into her retaliation charge, would not reasonably lead the EEOC to investigate a sex-discrimination or cultural-discrimination charge. Mack did not include claims for sex or culture[2] discrimination in her EEOC charge and cannot bring those claims in this case.

### C. Title VII Claim

Title VII of the Civil Rights Act of 1964 makes it an "unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "The Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004) (internal quotation marks and citations omitted). Intentional discrimination can be established through either direct or circumstantial evidence. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001). Mack admits that she never heard anyone at Wortham say anything negative about someone because of their race and she never heard any racial epithets. (Docket Entry No. 20, Ex. B, at 76–77). Because

---

[2] In *McGlothin v. Jackson Municipal Separate School District*, 829 F. Supp. 853, 865–66 (S.D. Miss. 1992), the court rejected the claimant's Title VII claim for culture discrimination. The claimant was terminated after refusing to stop wearing African headwraps to work, which she claimed were "related to her culture and cultural heritage." (*Id.*) The court did not find cultural practices that were unrelated to religion to be protected under Title VII. (*Id.*) Mack has neither produced evidence of a cultural practice that led to discrimination nor connected a cultural practice to protected religious beliefs. Because the claim is procedurally barred, this court does not address the viability of Mack's Title VII "culture" claim.

Mack presents no direct evidence of discrimination, her claim is analyzed under the circumstantial-evidence framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under this burden-shifting framework, a Title VII plaintiff carries the initial burden of establishing a *prima facie* case of intentional discrimination. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011); *see also McDonnell Douglas*, 411 U.S. at 802. To state a *prima facie* case, the plaintiff must show that she (1) is a member of a protected class, (2) was qualified for the position, (3) was subject to an adverse employment action, and (4) was replaced by someone outside the protected class or, in the case of disparate treatment, show that others similarly situated were treated more favorably. *Bouie v. Equistar Chems. LP*, 188 F. App'x 233, 236–37 (5th Cir. 2006); *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001). The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). If the employer sustains its burden, the *prima facie* case dissolves, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic. *Vaughn*, 665 F.3d at 636 (quoting *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

The first *prima facie* prong is undisputed. Mack is an African-American female, a member of a protected class. The parties dispute the second prong, whether Mack was qualified for her position. The defendants argue that Mack was not qualified, as evidenced by numerous reprimands for tardiness, unauthorized overtime, and insubordination, as well as Flournoy's notes to Hahn when Mack's position was eliminated that her work had been inaccurate and inefficient. (Docket Entry

11

No. 20, at 17). Mack recognized that she was tardy more than anyone else in the department, and that her violations of company attendance policies would have been cause for terminating her employment. (Docket Entry No. 20, Ex. B, at 176, 210).[3] Mack does not claim that she was more qualified than other assistants but believes she was qualified for her position.

An unqualified employee is generally one who does not satisfy objective minimum requirements for her position. *See, e.g.*, *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 491 (5th Cir. 2011) ("It is undisputed that Davis did not possess the required security clearance for the OPR Inspector position. As such, she cannot make out a *prima facie* failure to promote claim, and summary judgment on Davis's racial and gender discrimination claims was proper."); *Comeaux-Bisor v. YMCA of Greater Hous.*, 290 F. App'x 722 (5th Cir. 2008) ("[A]ttendance is an essential job function without which one cannot be considered qualified to perform most jobs. . . . Comeaux's failure to report to work rendered her unqualified for her position." (citing *Hypes v. First Commerce Corp.*, 134 F.3d 721, 727 (5th Cir. 1998))).

Wortham does not explain what the minimum qualifications were for Mack's position. Instead, Wortham focuses on the fact that it had cause to terminate Mack's employment. Wortham's qualifications arguments are more appropriately addressed in a pretext analysis. *See Perales v. Am. Ret. Corp.*, No. SA-04-CA-0928, 2005 WL 2367772, at *8 (W.D. Tex. Sept. 26, 2005) ("[A]llowing defendant to attack plaintiff's prima facie case with its subjective criticisms of plaintiff's work performance would sidestep the analytical framework consistently applied in Title VII cases."); *see*

---

[3] In her deposition, Mack claims not to remember several of the incidents documented in her Wortham employee file and insinuates that some of the reprimands documented were made up because she could not recall them. (Docket Entry No. 20, Ex. B, at 144, 146–47, 183, 196–97). She stated that, if the documentation of her tardiness were accurate, then she understands that she could have been terminated for any of these instances. (*Id.* at 147).

*also Lindsey v. Prive Corp.*, 987 F.2d 324, 327 (5th Cir. 1993) ("Subjective criteria should not be considered a part of the prima facie evaluation in summary judgment proceeding."); *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1506 (5th Cir. 1988) (explaining that examining an ADEA plaintiff's qualifications in both the *prima facie* and the pretext stages of an employment-termination case is unnecessarily redundant); *Eindorf v. Extremetix, Inc.,* No. H-09-2571, 2010 WL 4705262, at *7 (S.D. Tex. Nov. 12, 2010) ("Extremetix is similarly contending that Eindorf[, the ADEA plaintiff,] is not 'qualified' because he failed to meet his supervisors' expectations. But there is nothing in the record suggesting that Eindorf did not possess the same qualifications on the day he was discharged as on the day he was hired."). This court assumes, without deciding, that Mack was qualified for her position for purposes of establishing her *prima facie* case.

Mack satisfies the third *prima facie* prong. Termination or discharge is an adverse employment action, 42 U.S.C. § 2000e-2(a)(1), as are "demotions, refusals to hire, refusals to promote, and reprimands," *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) (quoting *Pierce v. Tex. Dep't of Criminal Justice, Institutional Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994)). Because Mack can establish at least one adverse employment action — job termination — she satisfies this element of the *prima facie* case.

For the fourth prong, Mack must show either that she was replaced by someone outside her protected class or that similarly situated persons outside of her protected class were treated more favorably. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). Mack alleged in her complaint that she was replaced in the Marine Department by "a younger Hispanic female, who was the friend of two Hispanic employees working in the Marine Department." (Docket Entry No. 6, ¶ 9). In her EEOC charge, Mack stated that "Dreana Lemons, Hispanic female, with far less

13

seniority was allowed to return to an administrative assistant position one week after my lay-off." (Docket Entry No. 6). Flournoy stated that the Marine Department "was operating efficiently with one employee still out on leave"; that "when [a] second employee returned from maternity leave, the department would be overstaffed"; that he resolved to eliminate Mack's position to control costs and boost efficiency, and that no one replaced Mack. (Docket Entry No. 20, Ex. E, Flournoy Aff., at 1–2). In her deposition, Mack testified that she did not know who, if anyone, had replaced her. She had not been back to Wortham since her job termination, and she knew of no evidence to dispute the contention that her position in the Marine Department remained unfilled. (Docket Entry No. 20, Ex. B, at 222–23). Mack fails to raise a fact dispute as to whether she was replaced by a person outside her protected class because she cannot raise a fact dispute as to whether she was replaced at all.

With respect to allegedly less-favorable treatment, Mack admits that she was one of the highest paid assistants in the company and states that she believes she made "almost double" what some of the other assistants made. (*Id.* at 223–24). Although Mack's sex-based claims and claims that arose during her time working in the Risk Management Department are barred, it is worth noting that she was replaced in the Risk Management position by another black female, Byrona Mitchell. (*Id.* at 98–100). All the assistants were female. (*Id.* at 119–20). Twenty-two of the assistants in the departments Mack worked in were African-American. (Docket Entry No. 20, Ex. F, Response No. 10). Though Mack was unsure of the ages of all of the assistants, at least one (Flo Tuten) was older than Mack, (Docket Entry No. 20, Ex. B, at 219–20). Mack offers only her subjective belief that she would have been treated differently if not for her race, sex, and age; that clients and unidentified Wortham employees "didn't want to see a black person sitting at that desk";

14

and that "they probably wanted someone younger and someone who was not [black]." (*Id.* at 115, 117–18, 121). A broad, generalized statement of less-favorable treatment is insufficient to create a fact dispute as to disparate treatment or discrimination. *See Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1186 (5th Cir. 1997) ("Without testimony of the circumstances, or without examples of blacks who were scrutinized while similarly-situated whites were not, a broad, generalized statement that black employees were 'watched' more closely than whites is incompetent to establish a pattern of discrimination."). No matter how genuinely held, a plaintiff's subjective belief that she suffered discrimination, without supporting evidence, is insufficient to create a triable fact dispute. *See, e.g.*, *Waggoner v. City of Garland*, 987 F.2d 1160, 1166 (5th Cir. 1993) ("[Waggoner] alleges that Hamilton and Phillips not only knew the allegations were false, but that in fact they fabricated them for the purpose of discriminating against Waggoner because of his age. He fails, however, to produce any evidence that supports his conclusionary [*sic*] allegations."). As a matter of law, Mack has not established the fourth element of a *prima facie* case of intentional race discrimination.

### D. The ADEA Claim

The ADEA provides that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The Act protects "[i]ndividuals at least 40 years of age." *Id.*, § 631(a). Age discrimination can be established through either direct or circumstantial evidence. *Laxton v. Gap. Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). An ADEA plaintiff must prove by a preponderance of the evidence that age was the "but-for" cause of the employer's adverse action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175–77 (2009) (holding that the phrase "because of . . . age" does not

support a mixed-motive jury instruction). The *Gross* Court declined to decide whether the *McDonnell Douglas* burden-shifting framework used in Title VII cases is appropriate in the ADEA context; the lower courts continue to apply it. *Davis v. Farmers Ins. Exch.*, 372 F. App'x 517, 518 n.1 (5th Cir. 2010).

An ADEA plaintiff relying on circumstantial evidence must first make a *prima facie* showing of discrimination. The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 352 (5th Cir. 2005). The elements of a *prima facie* showing are that "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010).

Mack bases her age-discrimination claim on circumstantial rather than direct evidence. Mack does not recall hearing anyone at Wortham make adverse or negative comments about someone based on age. (Docket Entry No. 20, Ex. B, at 108). Elements one and three of the *prima facie* showing are undisputed: Mack was born on November 5, 1953, (Docket Entry No. 6); she was 55 years old when her job was eliminated, within the ADEA's protected class.

Wortham again disputes whether Mack was qualified for her position. Wortham emphasizes records of her tardiness, violations of overtime policies, insubordination, and inaccurate work. An ADEA plaintiff can establish a *prima facie* case by showing that she continued to possess the necessary qualifications for her job at the time of her termination. *Bienkowski*, 851 F.2d at 1506. "Continued to possess the necessary qualifications" is construed broadly to mean that the plaintiff

has not suffered a physical disability or loss of a necessary professional license that rendered her unfit for the position for which she was hired. *Id.* at n.3; *Stippick v. Stone & Webster Servs., LLC*, Civ. A. No. H-10-0290, 2011 WL 564081, at *6 (S.D. Tex. Feb. 8, 2011). Neither party offers evidence of the qualifications for the Administrative Assistant position or any occurrence since Mack's hiring that made her unfit. For the reasons discussed above, this court assumes, without deciding, that Mack has satisfied this prong. The job-performance issue is addressed in the pretext analysis.

Again, Mack cannot establish the fourth element of the *prima facie* case; she has not met her burden to show that she was replaced by anyone when her position was terminated or was otherwise discharged because of her age.

### E.   Legitimate Nondiscriminatory Justification and Pretext

Even if Mack had made a *prima facie* showing of race or age discrimination, summary judgment for Wortham is still proper. Wortham has proffered a legitimate, nondiscriminatory reason for terminating Mack's employment: a change in economic conditions and reduced work load in the Marine Department. (Docket Entry No. 20, Ex. A, at 37–38). Flournoy assessed Mack's performance only after determining that one support-staff position needed to be eliminated. (*Id.* at 37). Flournoy asked each member of the technical and professional staff to rank the employees in the Marine Department. Every person ranked Mack at the bottom. Flournoy took these rankings into consideration when deciding to terminate Mack's job. (Docket Entry No. 20, Ex. E, at 1). Flournoy's letter to Hahn, (Docket Entry No. 20, Ex. A, at 37); the reasons given in Mack's termination notice, (*id.* at 38); and the documented incidents of Mack's insubordination, tardiness, and unapproved overtime all support a legitimate, nondiscriminatory reason for Mack's termination.

A Title VII plaintiff can show pretext either by evidence of disparate treatment or by showing that the employer's explanation of the adverse employment action is false or unworthy of credence. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). Mack has neither identified nor presented evidence that Wortham's stated reasons for terminating her job and eliminating her position were false or unworthy of credence. No evidence disputes Wortham's assertion that a new automation system boosted efficiency and that it had lost a significant client, resulting in overstaffing in the Marine Department and a need to control expenses. Similarly, Mack has not identified or presented evidence controverting the reasons Wortham gave for eliminating her position rather than another employee's. These reasons were based on Mack's job performance and persistent problems in the workplace. Although Mack does not admit to inaccurately completing checklists, she admits that she was tardy more than any other assistant and had consistently violated Wortham's overtime policy. (Docket Entry No. 20, Ex. B, at 176, 186–87). Mack has not identified or produced any evidence to dispute Wortham's assessment that she was the weakest member of the department.

Mack has not raised a factual dispute that race was a motivating factor in her job termination. Nor has she shown that she suffered disparate treatment from those outside her protected class. She offers no support other than her subjective beliefs that she would have been treated differently if she was younger, a Caucasian, or male. Wortham is entitled to summary judgment.

### F. Breach of Contract

In Texas, a plaintiff claiming breach of contract must show: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Mullins v.*

18

*TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)). A contract, whether oral or written, must define its essential terms with sufficient precision to enable a court to determine the obligations of the parties. *New Process Steel, L.P. v. Sharp Freight Sys., Inc.*, No. 01-04-00764-CV, 2006 WL 947764, at *3 (Tex. App.—Houston [1st Dist.] Apr. 13, 2006, no pet.). The Texas statute of frauds provides that a promise or agreement which is not to be performed within one year of the date of making the agreement is enforceable only if it is in writing and signed by the person to be charged with the promise or agreement. TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(6) (West 2009).

Mack claimed that Wortham contracted with her in 2005 to review her performance annually. (Docket Entry No. 6, ¶ 13). The only record evidence supporting this assertion is an email from J. M. Jones to Hahn, on which Mack is copied, confirming a prior telephone conversation about Mack's request for an annual performance review. (Docket Entry No. 20, Ex. G). This evidence does not establish a contract between Mack and Wortham. This three-sentence email lacks essential terms, imposes no obligation on Mack, and cannot be satisfied within a year, in violation of the statute of frauds. Mack's breach-of-contract claim fails as a matter of law.

**IV.    Conclusion**

Wortham's motion for summary judgment is granted. Final judgment is entered by separate order.

SIGNED on November 7, 2012, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge